**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SARA E. HURST; LAW OFFICE OF
SARA WILLIAMS HURST, LLC,

     Plaintiffs - Appellants,

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY; ALLIED INSURANCE
COMPANY OF AMERICA,

     Defendants - Appellees.

No. 19-8040
(D.C. No. 2:18-CV-00081-NDF)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

This case involves a dispute over insurance coverage. Plaintiffs sued

Defendants Nationwide Mutual Insurance Company and Allied Insurance Company

of America (collectively, Nationwide) under various theories after Nationwide

declined uninsured motorist (UM) coverage to Plaintiff Sara Hurst (Ms. Hurst) for

injuries she sustained in a tragic collision. The district court granted summary

judgment to Nationwide. Plaintiffs appeal.

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Our jurisdiction arises under 28 U.S.C. § 1291. We address whether an insurance policy (the Policy) issued to Plaintiff Law Office of Sara Williams Hurst, LLC (Hurst LLC) provides UM benefits to Ms. Hurst individually. Because the Policy did not list Ms. Hurst as a named insured and because she was not otherwise occupying a vehicle covered by the Policy at the time of the collision, we affirm.

I.

On May 31, 2014, as Ms. Hurst and her husband rode bicycles on the shoulder of a roadway in Sheridan, Wyoming, an uninsured motorist veered off the road and hit them. The impact seriously injured Ms. Hurst and killed her husband.

About a month before the accident, Nationwide issued a commercial auto policy covering a 2007 Lexus owned by Hurst LLC. Following the accident, Ms. Hurst submitted a claim to Nationwide under the commercial auto policy. She asserted it provided her, as an individual, with UM coverage.[1] Nationwide denied her claim. In Nationwide's view, the policy provided no coverage because Ms. Hurst was not in the 2007 Lexus when the uninsured motorist struck her.[2] Further, the commercial policy did not list Ms. Hurst as an individually named insured.

---

[1] Ms. Hurst also claimed UM coverage against her personal auto insurer, MetLife, whose policy did in fact list Ms. Hurst, as well as her husband, as individually named insureds. Evidently, because her personal policy's UM coverage was insufficient, she tried to "stack" her law firm's commercial policy on top of her personal UM coverage by filing a claim with Nationwide.

[2] Ms. Hurst suffered a concussion, collapsed lung, pulmonary contusion, internal bleeding, a thoracic fracture, and fractures to her leg and ribs. Her injuries required several surgeries and physical therapy.

After Nationwide denied her claim, Ms. Hurst asked her broker, David Alden, to add her to the Policy as an individually named insured going forward. Nationwide refused Mr. Alden's request, however, citing its normal practice of not naming individuals as insureds on commercial policies. But, twenty-six days before the Policy expired, Nationwide ultimately gave in and added Ms. Hurst to the Policy. Mr. Alden told Ms. Hurst that Nationwide "is going to add you to the policy and pick up future uninsured and UM pedestrian claims."

After the revision, Ms. Hurst sued Nationwide for denying her claim. She argued that by adding her to the Policy during the same coverage period in which the May 2014 accident occurred, Nationwide created backdated coverage. Ms. Hurst claimed the Policy's "liberalization clause" expanded coverage to the May 2014 accident. Alternatively, she sought reformation of the Policy because she and Mr. Alden had intended for the Policy to provide her with UM coverage regardless of whether she was occupying the covered 2007 Lexus.

Both parties moved for summary judgment. The district court granted summary judgment to Nationwide, holding that the Policy's liberalization clause did not retroactively create coverage for the May 2014 accident. The court also declined to reform the Policy because Ms. Hurst had failed to present evidence supporting such relief.

Plaintiffs now appeal. We review the district court's judgment de novo. Carpenter v. Boeing Co., 456 F.3d 1183, 1192 (10th Cir. 2006).

3

II.

This appeal requires interpretation of a Wyoming insurance policy. Because Ms. Hurst sued in federal court based on diversity jurisdiction, we "must ascertain and apply state law to reach the result the Wyoming Supreme Court would reach if faced with the same question." Cooperman v. David, 214 F.3d 1162, 1164 (10th Cir. 2000).

Under Wyoming law, the rules of contract interpretation apply to insurance policies. Hurst v. Metro. Prop. & Cas. Ins. Co., 401 P.3d 891, 895 (Wyo. 2017). And as with ordinary contracts, we interpret unambiguous insurance policies as a matter of law. Id. In interpreting an unambiguous policy, we focus on "the parties' intent from the contract language alone . . . although it may consider the context in which the contract was written, including the subject matter, the purpose of the contract, and the circumstances surrounding its making." Id. (quoting Fox v. Wheeler Elec., Inc., 169 P.3d 875, 878 (Wyo. 2007)). The words used in insurance policies "are given the plain meaning that a reasonable person, in the position of the insured, understands them to mean." Id. (quoting Doctors' Co. v. Ins. Corp. of Am., 864 P.2d 1018, 1023 (Wyo. 1993)).

But because "insurance policies represent contracts of adhesion where the insured has little or no bargaining power to vary the terms, if the language is ambiguous, the policy is strictly construed against the insurer." N. Fork Land & Cattle, LLLP v. First Am. Title Ins. Co., 362 P.3d 341, 346 (Wyo. 2015) (quoting Doctors' Co., 864 P.2d at 1024). A court will find an ambiguity in the language of

4

an insurance policy only if the language is capable of more than one reasonable interpretation. Id.

### III.

We begin by interpreting the Policy language. Nationwide issued the Policy to Hurst LLC to provide coverage for a 2007 Lexus the LLC owned. The Policy's Business Auto Declarations page lists Hurst LLC, but not Ms. Hurst, as the named insured and has effective coverage dates of April 7, 2014 through April 7, 2015. Under the Policy, if the named insured is an LLC, the UM provision provides coverage for "[a]nyone occupying a covered auto or a temporary substitute for a covered auto." App., Vol. I at 96–97 (internal quotation marks omitted). Similarly, the Policy's medical payments provision provides "reasonable expenses" and "necessary medical and funeral services" to either the named insured or "[a]nyone else occupying a covered auto or a temporary substitute for a covered auto." Id. at 92 (internal quotation marks omitted). Ms. Hurst concedes she was neither a named insured, nor occupying the 2007 Lexus or a substitute auto at the time of the May 2014 accident.

Ms. Hurst, therefore, cannot claim coverage under the Policy as it existed on the date of the accident. Indeed, the Policy's language as of that date unambiguously did not provide her with personal coverage. She instead claims coverage under either the liberalization clause of the Policy or through reformation of the Policy.

5

A.

As to the liberalization clause, Plaintiffs contend that because Nationwide added Ms. Hurst to the Policy as an individually named insured—less than a month before the policy's expiration and more than 9 months after the accident—it retroactively triggered coverage for the May 2014 accident. The liberalization clause states that revisions to the policy apply immediately:

> If we adopt any revision that would broaden coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will *immediately* apply to this policy.

App., Vol. I at 91 (emphasis added). The parties agree that this policy language applied to Ms. Hurst, but disagree as to whether it provided retroactive or prospective coverage to her, as a newly named insured. We conclude that the language provided only prospective coverage.

Wyoming courts give the words used in insurance policies their plain meaning, as "a reasonable insured would understand" them. N. Fork Land & Cattle, LLLP, 362 P.3d at 346. The plain meaning of the word "immediately" includes "without any delay or lapse of time; instantly, directly, straightaway; at once" (Oxford English Dictionary), and "without interval of time" (Merriam-Webster). See also Moe v. State, 123 P.3d 148, 152 (Wyo. 2005) ("A dictionary definition of the word 'immediately' is 'without interval of time; straightway.'"). By using the word "immediately," the liberalization clause unambiguously intended for the Policy revision to take effect "instantly" or "at once." Neither the word "immediately," nor the liberalization clause as a whole, suggest any retroactive or backdated effect. If

6

broadened coverage applied retroactively to accidents occurring before the policy revision took effect, then the clause would say so.  But it does not.  Instead, the clause's only reasonable interpretation is that the broadened coverage applied instantly for the rest of the Policy period.

We therefore reject Ms. Hurst's argument that the liberalization clause retroactively created coverage for the May 2014 accident.  Moreover, because Ms. Hurst was neither a named insured, nor occupying the 2007 Lexus when the uninsured motorist hit her, the Policy provides no UM or medical payment benefits for the May 2014 accident.  We thus affirm the district court's grant of summary judgment on this ground.

B.

Plaintiffs next claim the district court erred by not reforming the Policy because Ms. Hurst and Mr. Alden had intended for the Policy's UM coverage to apply regardless of whether Ms. Hurst occupied the 2007 Lexus.[3]  Wyoming law permits courts to reform contracts under the equitable "maxim that equity treats that as done which ought to have been done."  Hutchins v. Payless Auto Sales, Inc., 38 P.3d 1057, 1063 (Wyo. 2002) (internal quotation marks and citation omitted).

---

[3] The parties dispute whether Mr. Alden acted as Nationwide's agent—specifically whether Plaintiff may impute Mr. Alden's knowledge to Nationwide. Nationwide appears to acknowledge that Mr. Alden "was Nationwide's agent for purposes of selling insurance policies."  The district court, however, did not address any agency issue in its summary judgment order.  But even assuming we can impute Mr. Alden's knowledge to Nationwide, Plaintiffs failed to raise a fact issue on their reformation claim.

Reformation is proper where clear and convincing evidence establishes: "(1) a meeting of the minds—a mutual understanding between the parties—prior to the time a writing is entered into, (2) a written contract, or agreement, or deed (3) which does not conform to the understanding, by reason of mutual mistake." Id.

The availability of the remedy depends "upon two particulars: (1) that the mistake occurred in the drafting of the instrument, rather than in reaching the antecedent agreement; and (2) that the mistake was reciprocal and common to both parties with each being under the same misconception as to the terms of the written instrument." W.N. McMurry Const. Co. v. Cmty. First Ins., Inc. Wyoming, 160 P.3d 71, 78 (Wyo. 2007) (internal quotation marks and citations omitted). Moreover, the "required mutuality of mistake can only be found if the parties had identical intentions as to the material terms of the policy." Ohio Cas. Ins. Co. v. W.N. McMurry Const. Co., 230 P.3d 312, 321 (Wyo. 2010).

Plaintiffs cite Mr. Alden's testimony to show that both she and Mr. Alden intended for the Policy to provide her UM coverage even if she did not occupy the 2007 Lexus. Mr. Alden testified:

> Q    When you procured this policy, did you intend for Sara Hurst to be covered for uninsured motorist benefits under this policy regardless of whether she was occupying a covered auto?
>
> A.    I procured uninsured motorist for Sara Hurst individually to be covered when she was hit by an uninsured motorist. I did not ever – the pedestrian part never came into play. I procure uninsured motorist for people who are injured in an automobile accident by somebody who doesn't have liability insurance.
>
> Q    Is the answer to my question yes?

8

A   Yes.

App., Vol. II at 84. And by declaration, Ms. Hurst stated she "intended and understood that [she] purchased complete individual uninsured motorist coverage." Id. at 88. Mr. Alden also testified, however, that Ms. Hurst "bought a Lexis in the name of her law firm, or the LLC" so he put the Policy "with her LLC business owner's policy." Id. at 78. Indeed, Mr. Alden never contemplated coverage under the Policy for the type of accident that occurred here—a Saturday-morning bicycle accident—as he testified that the "pedestrian part never came into play." Id. at 84.

Moreover, for the Policy to cover Ms. Hurst "regardless of whether she was occupying a covered auto"—i.e., for the type of accident that occurred here—she would have to have been a named insured on the Policy. But Ms. Hurst presents no evidence (much less clear and convincing evidence) showing that she and Mr. Alden shared an understanding that Ms. Hurst be an individually named insured, nor that the Policy inadvertently failed to include coverage for the type of accident in this case. Hutchins, 38 P.3d at 1063 (stating that reformation requires clear and convincing evidence of a "mutual understanding" between the parties). Thus, we conclude that Mr. Alden's testimony does not show a meeting of the minds about whether the Policy would cover Ms. Hurst for the injuries she sustained in the bicycling accident.

Ms. Hurst's own declaration fares no better. Ms. Hurst merely stated she wanted "complete individual uninsured motorist coverage." App., Vol. II at 88. She offered no evidence that she understood or expected to be individually named on the

9

Policy or that she and Mr. Alden discussed specifics regarding the scope of UM coverage. Instead, the record reveals that Ms. Hurst contacted Mr. Alden to provide "full coverage" for a vehicle bought by her law firm and that Mr. Alden procured the policy with "Hurst LLC" as the named insured. Small v. King, 915 P.2d 1192, 1194 (Wyo. 1996) (concluding that a full coverage request "is not a specific inquiry about a specific type of coverage"). Plaintiffs fail to demonstrate why we should reform the Policy to provide coverage for personal activities (bicycling) unrelated to her law firm or the 2007 Lexus the Policy covered.

Because Plaintiffs present no evidence showing a "mutual understanding between the parties," no fact issue exists supporting reformation, and we affirm the district court's grant of summary judgment to Nationwide. Ohio Cas. Ins. Co., 230 P.3d at 320, 321.

IV.

Finally, Plaintiffs argue that the district court erred by granting summary judgment to Nationwide on Plaintiffs' statutory attorneys' fees claim. Wyoming law authorizes an award of attorneys' fees when an insurer "refuses to pay the full amount of a loss covered by the policy and that the refusal is unreasonable or without cause." Wyo. Stat. § 26-15-124(c). We, as well as the Wyoming Supreme Court, recognize the district court's discretion to award fees and interest under the statute. Stewart Title Guar. Co. v. Tilden, 181 P.3d 94, 102 (Wyo. 2008) ("Use of the word 'may' suggests that the award of both attorney's fees and the award of interest are discretionary."); Bruegger v. National Old Lines Ins. Co., 529 F.2d 869, 870 (10th

10

Cir. 1976) ("[W]e . . . agree with the court's generalization that awards of attorney fees and prejudgment interest under Wyoming case and statutory law are matters directed to the court's discretion.").

The district court determined that "Plaintiffs' claims for relief required either reformation of the contract, or for the Court to find that the Liberalization clause provided retroactive coverage." And because Plaintiffs failed to show that coverage existed for the May 2014 accident, the district court found Nationwide reasonably denied Ms. Hurst's insurance claim. See supra Part III(B). We agree that Nationwide reasonably denied Plaintiffs' claim. Thus, we affirm the district court's grant of summary judgment to Nationwide on Plaintiffs' contingent claim for statutory attorneys' fees.

AFFIRMED.

Entered for the Court

Joel M. Carson III
Circuit Judge